RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 22 2025

KEVIN P WEIMER Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
_____ **DIVISION**

_Mitchell Todman_
(Print your full name)

Plaintiff *pro se*,

v.

_Signature Flight Support_

_____

_____

(Print full name of each defendant; an
employer is usually the defendant)

Defendant(s).

CIVIL ACTION FILE NO.

**1:25 -CV- 2185**

(to be assigned by Clerk)

## *PRO SE* EMPLOYMENT DISCRIMINATION COMPLAINT FORM

### Claims and Jurisdiction

1.  This employment discrimination lawsuit is brought under (check only those that apply):

    _____   Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for exercising rights under this statute.

    **NOTE**: To sue under Title VII, you generally must have received a notice of right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").

Page 1 of 9

_____     Age Discrimination in Employment Act of 1967, <u>29 U.S.C. §§ 621</u> et seq., for employment discrimination against persons age 40 and over, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Age Discrimination in Employment Act, you generally must first file a charge of discrimination with the EEOC.

✔     Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 <u>et seq.</u>, for employment discrimination on the basis of disability, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Americans With Disabilities Act, you generally must have received a notice of right-to-sue letter from the EEOC.

_____     Other (describe)   _____

_____

_____

_____

_____

_____

2.     This Court has subject matter jurisdiction over this case under the above-listed statutes and under <u>28 U.S.C. §§ 1331</u> and <u>1343</u>.

## Parties

3.    Plaintiff.    Print your full name and mailing address below:

Name    _Mitchell Philmore Todman_

Address    _4268 Savannah Drive_

_Atlanta, GA 30349_

4.    Defendant(s).    Print below the name and address of each defendant listed
on page 1 of this form:

Name    _Signature Flight Support_

Address    _13485 Veterans Way #600_

_Orlando, FL 32827_

Name    _____

Address    _____

_____

Name    _____

Address    _____

_____

## Location and Time

5.    If the alleged discriminatory conduct occurred at a location **different** from the
address provided for defendant(s), state where that discrimination occurred:

_3956 Aviation Circle NW_

_Atlanta, GA 30336_

6.  When did the alleged discrimination occur? (State date or time period)

_____

_____

_____

_____

## **Administrative Procedures**

7.  Did you file a charge of discrimination against defendant(s) with the EEOC or any other federal agency?  ✓ Yes  _____ No

    If you checked "Yes," attach a copy of the charge to this complaint.

8.  Have you received a Notice of Right-to-Sue letter from the EEOC?

    ✓ Yes  _____ No

    If you checked "Yes," attach a copy of that letter to this complaint and state the date on which you received that letter: *Emailed to no on 28 JAN 2025 m/f.*

9.  If you are suing for **age discrimination**, check one of the following:

    _____  60 days or more have elapsed since I filed my charge of age discrimination with the EEOC

    _____  Less than 60 days have passed since I filed my charge of age discrimination with the EEOC

10. If you were employed by an agency of the State of Georgia or unsuccessfully sought employment with a State agency, did you file a complaint against defendant(s) with the Georgia Commission on Equal Opportunity?

_____ Yes       _____ No       ___✓___ Not applicable, because I was not an employee of, or applicant with, a State agency.

If you checked "Yes," attach a copy of the complaint you filed with the Georgia Commission on Equal Opportunity and describe below what happened with it (i.e., the complaint was dismissed, there was a hearing before a special master, or there was an appeal to Superior Court):

_____

_____

_____

_____

11. If you were employed by a Federal agency or unsuccessfully sought employment with a Federal agency, did you complete the administrative process established by that agency for persons alleging denial of equal employment opportunity?

_____ Yes       _____ No       ___✓___ Not applicable, because I was not an employee of, or applicant with, a Federal agency.

If you checked "Yes," describe below what happened in that administrative process:

_____

_____

_____

_____

## Nature of the Case

12.   The conduct complained about in this lawsuit involves (check only those that apply):

_____   failure to hire me
_____   failure to promote me
_____   demotion
_____   reduction in my wages
_____   working under terms and conditions of employment that differed from similarly situated employees
_✓___   harassment
_____   retaliation
_✓___   termination of my employment
_✓___   failure to accommodate my disability
_____   other (please specify) _____

_____

13.   I believe that I was discriminated against because of (check only those that apply):

_____   my race or color, which is _____
_____   my religion, which is _____
_____   my sex (gender), which is _____ male _____ female
_____   my national origin, which is _____
_____   my age (my date of birth is _____)
_✓___   my disability or perceived disability, which is:

_PTSD, Anxiety, Depression_____

_____   my opposition to a practice of my employer that I believe violated the federal anti-discrimination laws or my participation in an EEOC investigation

_____   other (please specify) _____

_____

Page 6 of 9

14. Write below, as clearly as possible, the essential facts of your claim(s). Describe specifically the conduct that you believe was discriminatory or retaliatory and how each defendant was involved. Include any facts which show that the actions you are complaining about were discriminatory or retaliatory. Take time to organize your statements; you may use numbered paragraphs if you find that helpful. Do not make legal arguments or cite cases or statutes.

- Failure to accommodate ADA request & wrongful termination.
I, Mitchell Todman, submitted a request for an accommodation under ADA to former employer, Signature Flight Support in April of 2024. Signature's Employee Handbook states Signature will put forth effort to engage/discuss/assess the ADA reasonable accommodation's requested by employees. However, Signature did not engage me in any manner to discuss the details of the accommodation and how we could implement a solution satisfactory to both parties as mentioned in the Employee Handbook. Signature immediately terminated my employment and made false claims regarding my reasonable accommodation request in the termination letter. Signature falsely claimed My request for additional medical treatment was "indefinite" and not clearly certain regarding outcome. Notably, I was terminated by the leave administrator who is was not in my chain of command and does not have the authority to terminate my employment.

- Harassment - I was forced to take leave in the 4th quarter of 2023. While on approved vacation Regional VP Santhia called me numerous times including late nights. Santhia said I have a phone & I need to answer it. I came back from my forced vacation not rested and more stressed.

(Attach no more than five additional sheets if necessary; type or write legibly only on one side of a page.)

Page 7 of 9

15.   Plaintiff      _____   still works for defendant(s)

                     ✓        no longer works for defendant(s) or was not hired

16.   If this is a disability-related claim, did defendant(s) deny a request for reasonable accommodation?    ✓ Yes      _____ No

      If you checked "Yes," please explain: _I submitted a request for_
a _reasonable accommodation of 1hr per week for 12 weeks totaly_
_12hrs for medical treatment. Signature falsely stated my request_
_was indefinite and immedately terminated my employment without_
_a discussion/engagement to discuss the request_

17.   If your case goes to trial, it will be heard by a judge <u>unless</u> you elect a jury trial. Do you request a jury trial?    _____ Yes    ✓ No

### **Request for Relief**

As relief from the allegations of discrimination and/or retaliation stated above, plaintiff prays that the Court grant the following relief (check any that apply):

      ✓        Defendant(s) be directed to _Pay claimant for lost wages_ ^_termination to case resolution_ as
_well as punitive damages and non-economic damges emotonal distress._

      ✓        Money damages (list amounts) _$ 1,600,000.⁰⁰ total_

      _____

      ✓        Costs and fees involved in litigating this case

      ✓        Such other relief as my be appropriate

Page 8 of 9

## PLEASE READ BEFORE SIGNING THIS COMPLAINT

Before you sign this Complaint and file it with the Clerk, please review Rule 11 of the Federal Rules of Civil Procedure for a full description of your obligation of good faith in filing this Complaint and any motion or pleading in this Court, as well as the sanctions that may be imposed by the Court when a litigant (whether plaintiff or defendant) violates the provisions of Rule 11. These sanctions may include an order directing you to pay part or all of the reasonable attorney's fees and other expenses incurred by the defendant(s). Finally, if the defendant(s) is the prevailing party in this lawsuit, costs (other than attorney's fees) may be imposed upon you under Federal Rule of Civil Procedure 54(d)(1).

Signed, this _2&_ day of ____April____, 20 _25_

_____
(Signature of plaintiff *pro se*)

_Mitchell Tolman_
(Printed name of plaintiff *pro se*)

_4268 Savannah Drive_
(street address)

_Atlanta, GA 30349_
(City, State, and zip code)

_mtolman80@gmail.com_
(email address)

_(707) 484-1210_
(telephone number)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### PRE-CHARGE INQUIRY

For Official Use Only - Inquiry Number:

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC"). The information you give us on this Pre-Charge Inquiry (Form 290A) will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce. Answer **all** questions completely and briefly. Please write clearly.

After completing this Pre-Charge Inquiry, **return it immediately** to the EEOC office identified in the cover letter to this Pre-Charge Inquiry, or to the receptionist if you are completing this Pre-Charge Inquiry in an EEOC office.

After completing this Pre-Charge Inquiry, you may mail, drop-off, or fax it to the EEOC office closest to you. Please refer to the list of EEOC offices on the webpage to find the closest office. Your answers on the Pre-Charge Inquiry will help us see if your concerns are covered by the laws we enforce

**Please note: This Pre-Charge Inquiry is not a Charge of Discrimination.**

The Pre-Charge Inquiry is **not intended** for use by applicants for federal jobs or employees of the US government. See http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm for discrimination complaints in federal jobs.

| | |
|---|---|
| **Personal Information** | First Name: Mitchell    MI: P    Last Name: Todman<br>Home Phone ( )    Cell ( 407 ) 484-1210    Email: Mtodman18@gmail.com<br>Address: 4268 Savannah Drive    Apt:<br>City: Atlanta    County: Fulton    State: GA    Zip Code: 30349<br>What is the best way to reach you? Email<br>What are the best days and times to reach you? Any<br>Do you need language assistance? Yes ☐  No ☒<br>If so, what do you need? N/A<br><br>Date of Birth: May 18, 1980    Sex: Male ☒  Female ☐<br>General information about you that will allow us to serve all individuals better.<br>i. Are you Hispanic or Latino? Yes ☐  No ☒<br>ii. What is your race? Please choose all that apply: American Indian or Alaskan Native ☐  Asian ☐<br>Black or African American ☒    Native Hawaiian or Other Pacific Islander ☐    White ☐<br>iii. What is your National Origin or ancestry? Born in USVI |
| **Who do you think discriminated against you?** | Employer ☒    Union ☐    Employment Agency ☐    Other Organization ☐<br>Organization Name: Signature Aviation<br>Address: 13485 Veterans Way    Suite #: 800<br>City: Orlando    County: Orange    State: FL    Zip Code: 32827<br>Name of Human Resources Director or Owner: Amy Alexy, Chief People Officer / Maria Garton, Chief Legal Officer<br>Email: Amy.alexy@signatureaviation.net / maria.garton@signature    Phone: ( 407 ) 648-7200<br>How many employees (estimated) does the organization have at all locations? Check one:<br>Less than 15 ☐    15-100 ☐    101-200 ☐    201-500 ☐    More than 500 ☒<br>Where you work(ed) or applied to work (if different from the organization address above):<br>Address: 3958 Aviation Circle NW    Suite:<br>City: Atlanta    County: Fulton    State: GA    Zip Code: 30336 |

**THIS PRE-CHARGE IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Why do you think you were discriminated against?** | I think I was discriminated against because of:<br><br>[x] **Race - Your race:** _Black or African American_<br><br>[ ] **Color - Your color:** _____<br><br>[ ] **Religion - Your religion:** _____<br><br>[ ] **Sex (including pregnancy, gender identity, or sexual orientation)**<br><br>[ ] **National Origin - Your national origin:** _____<br><br>[ ] **Age (40 or older) - Your age at the time of the adverse employment action:** _____<br><br>[x] **Disability - Check all that apply:**<br>  [x] I have a disability<br>  [ ] I had a disability in the past<br>  [ ] I don't have a disability but I am treated as if I have a disability<br>  [ ] I am closely related to or associated with a person with a disability<br><br>**The disability involved:** _Work stress, hypertension, anxiety, depression_<br><br>**Is your employer aware of your condition?** Yes [x]  No [ ]<br><br>**If yes, how?** _Multiple ER visits and notification to HRBP Kerry-Ann McCollin and HRBP Cynthia Trombley_<br><br>[ ] **Genetic information, my family medical history, or my participation in genetic services like counseling, education or testing**<br><br>[x] **Retaliation - Check all that apply:**<br>  [ ] I filed a charge of job discrimination about any of the above<br>  [ ] I contacted a government agency to complain about job discrimination<br>  [ ] I complained to my employer about job discrimination<br>  [ ] I helped or was a witness in someone else's complaint about job discrimination<br>  [x] I requested an accommodation for my disability or religion<br><br>[ ] **None of the above - The reason for this inquiry:** _____ |
| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES: I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age. State the dates the action happened.<br><br>Date: _April 26, 2024_     Action: _No accommodations or alternative work discussed/offered by_ _Signature Aviation following my completion of FLMA. Additional leave was requested and I was abruptly separated._<br><br>Date: _____     Action: _____<br><br>Name of Person(s) Responsible: _Erika Solomon,_ |
| **What reason(s) were you given for this job action?** | Reason(s): _Separation letter stated my medical provider, VA, did not provide medical certainty and my request for_ _Additional leave was denied by Signature Aviation._<br><br>Who told you this? _Erika Solomon, PHR_     His/Her Job Title: _Leave Administrator_ |

**THIS PRE-CHARGE IS NOT A CHARGE OF DISCRIMINATION**

| What is your job, previous job, or the job you applied for? | Date Hired: _September 23, 2019_  Job Title at Hire: _General Manager_ |
|---|---|

Date Hired: _September 23, 2019_    Job Title at Hire: _General Manager_

Annual Pay Rate When Hired: _$105,000.00_    Last or Current Annual Pay Rate: _$124,000.00_

Job Title at Time of Alleged Discrimination: _General Manager_

Date Your Employment Ended: _April 26, 2024_    Select One:  Quit ☐  Discharged/Laid off ☒

Name and Title of your Immediate Supervisor: _Jay Moran, Area Director_

Job Applicants – What was the title of the job you applied for: _____

Date you applied: _____    Date you found out you were not hired: _____

**Was another person in the same or similar situation treated the same, better, or worse than you? EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?**

**Who was treated BETTER than you?**

1. Name: _____    Job Title: _____
Email: _____    Check how they are different from you:
Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐   Disability ☐
How were they treated better? _____
_____    Date: _____

2. Name: _____    Job Title: _____
Email: _____    Check how they are different from you:
Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐   Disability ☐
How were they treated better? _____
_____    Date: _____

**Who was treated WORSE than you?**

Name: _____    Job Title: _____
Email: _____    Check how they are different from you:
Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐   Disability ☐
How were they treated worse? _____
_____    Date: _____

**Who was treated the SAME as you?**

Name: _____    Job Title: _____
Email: _____    Check how they are different from you:
Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐   Disability ☐
How were they treated the same? _____
_____    Date: _____

**Are there any witnesses to any of the job actions taken against you? If yes, please provide their contact information and tell us what they will say.**

1. Name: _____    Job Title: _____
Email: _____    Phone: (___) _____
What will they tell us? _____
_____

2. Name: _____    Job Title: _____
Email: _____    Phone: (___) _____
What will they tell us? _____
_____

**THIS PRE-CHARGE IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Have you already filed a charge on this matter with the EEOC?** | Yes ☐    No ☒<br><br>If yes:  Date you filed: _____    Charge Number: _____ |
| **Have you filed a complaint on this matter with another agency?** | Yes ☐    No ☒<br><br>If yes:  Agency Name: _____<br><br>Date you filed: _____    Complaint Number: _____ |
| **Do you have someone representing you in this matter?** | Yes ☒    No ☐<br><br>If yes:  Attorney ☒    Union ☐    Other ☐<br><br>Name: _Morgan & Morgan_____    Date of contact: _August 26, 2024_<br><br>Email: _____    Phone: _(470) 616-3072_ |
| **Who can we contact if we are unable to reach you?** | Name: _Ebonee Mahone-Todman_____    Relationship: _Spouse_<br><br>Address: _4268 Savannah Drive_____    City: _Atlanta_    State: _GA_    Zip Code: _30349_<br><br>Email: _____    Home Phone ( ___ ) _____    Cell ( _678_ ) _525-3375_ |
| **Privacy Act Statement** | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC PRE-CHARGE INQUIRY, FORM 290A, ISSUED OCTOBER 2017. 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. §12117(a), 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information.  EEOC Pre-Charge Inquiry, Form 290A, issued October 2017. |

Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same basis as the EEOC's laws. **This Pre-Charge Inquiry is not a charge.** *If you would like to file a charge of discrimination immediately, contact the EEOC office closest to you.  A list of our offices is on our webpage.* We recommend that you keep a copy of your completed Pre-Charge Inquiry and the Cover Letter for your records.

**THIS PRE-CHARGE IS NOT A CHARGE OF DISCRIMINATION**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

**Issued On: 01/22/2025**

To: Mitchell Todman
4268 Savannah Drive , Atlanta, GA 30349
Charge No: 11B-2024-00449

EEOC Representative and email:    SHERESA JOHNSON
Federal Investigator
Sheresa.Johnson@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Darrell E. Graham
01/22/2025

Darrell E. Graham
District Director

 Gmail

**Mitchell Todman <mtodman18@gmail.com>**

---

## Copy of NRTS for EEOC No. 11B-2024-00449
1 message

---

**ALFREDA NEASMAN <ALFREDA.NEASMAN@eeoc.gov>**    Tue, Jan 28, 2025 at 1:42 PM
To: "mtodman18@gmail.com" <mtodman18@gmail.com>
Cc: IVAN GARCIA <IVAN.GARCIA@eeoc.gov>

Good afternoon,

I hope all is well. For your convenience, please see attached copy of the Notice of Right to Sue for the subject that was previously released and available for download through the portal. Have a good day.

Sincerely,

Alfreda J. Neasman

OAA

EEOC ATDO Enforcement Team 2

100 Alabama Street SW Ste 4R30

Atlanta GA 30303

(470-531-4805)



---

📁 **2025-01-21 NRTS 11B-2024-00449.pdf**
195K



Field Support Center
Legal Department
13485 Veterans Way, Ste 600
Orlando, FL 32827
T: 407 206 5291
Matthew.Klein@SignatureAviation.com

October 28, 2024

**VIA ONLINE RESPONDENT'S PORTAL**
U.S. Equal Employment Opportunity Commission

> RE:  *Mitchell Todman v. Signature Flight Support*
> EEOC Charge No.: 11B-2024-00449

Dear Investigator Suk:

I represent the Respondent in the above-referenced Charge. Please kindly note that Mr. Todman's former employer and the correct name of Respondent is Signature Flight Support LLC d/b/a Signature Aviation ("Signature" or the "Company"). Please also direct all of the Commission's future communications to me. This letter sets forth Signature's response to Mr. Todman's baseless claims of disability discrimination and retaliation. In short, Signature terminated Mr. Todman's employment, because he required an indefinite leave of absence for an alleged disability that the company could not accommodate. Signature requests the Commission issue a "No Cause" finding and dismiss the Charge because, as explained here, he could not perform his position with or without a reasonable accommodation.

I.    **Signature Flight Support and its Compliance with Discrimination Laws**

Signature operates fixed base operations ("FBOs"), a term in the aviation industry generally referring to private airport terminals and parking areas used by private and business aircraft, as opposed to commercial airlines which use commercial passenger terminals. Signature's services and products include airplane fueling, hangar and office rentals, ground handling, maintenance, de-icing, and providing world-class concierge services and amenities to pilots, passengers and their aircraft who demand nothing less than exceptional service the first time.

Signature is firmly committed to promoting equal employment opportunities and protecting its employees from unlawful discrimination, harassment and retaliation. To further this important mission, Signature maintains a Discrimination, Harassment, and Retaliation Prevention Policy. This policy prohibits discrimination and harassment based on race, color, national origin, ancestry, religion, age, **mental or physical disability**, veteran status, military status, medical condition, sex, marital status, sexual orientation, gender, gender identification, gender expression, genetic characteristics, or any other characteristic protected by federal, state, and/or local law. Signature also strictly prohibits retaliation against any employee who requests a reasonable accommodation. Mr. Todman recently acknowledged receiving a summary of this policy and access to where

the Handbook physically resides. The policy is also always accessible on the company intranet. A copy of this policy in the handbook, the summary of the policy, and Mr. Todman's acknowledgement of both are included as **Exhibit 1**. Further, Mr. Todman, along with all of his management peers was provided training from the undersigned on how to handle employees' requests for accommodations and knew the internal resources Signature made available to assist with medical leave of absence requests or other requests for accommodations.

### II.   Mr. Todman's Employment

Mr. Todman began working for Signature on September 23, 2019 when Signature hired him as the General Manager (GM) for its St. Thomas, U.S. Virgin Islands location. Since he was unsuccessful leading that base, on or about November 2023, Signature transferred him to its FTY location, a smaller location, in Fulton County, Georgia, which had a GM opening at the time.

The GM job description is attached as **Exhibit 2**. But in short, the GM runs the FBO in all respects. The GM interacts with airport officials, the corporate office, its direct reports (*i.e.*, all the employees of the location), vendors, and Signature's customers, many of whom are tenants who park their aircraft at the base, and all of whom expect world-class customer service and prioritization of their issues. Needless to say, it is a stressful job, and a successful GM must be able to handle stressful situations with grace.

### III.   Mr. Todman's Performance Issues

Mr. Todman's Charge is clear that he believes his employment ended due to a disability. The actual reason his employment ended is because he was not a qualified individual with a disability—he could not perform the essential functions of his job with or without a reasonable accommodation.

But Signature was in the process of terminating Mr. Todman's employment before and as his leave began. As explained below, even if he could perform his job, he would have been terminated upon his return to work due to his performance.

As GM, Mr. Todman reported to Jay Moran, the Area Director. In turn, Mr. Moran reported to Sanchia Rivera-Beckno, the Regional Vice President for Signature's Southeast Region. Ms. Rivera-Beckno and Mr. Moran assumed these positions in January 2023. Both of them were having significant concerns about Mr. Todman's lack of presence at the base due to remarks made by other FTY employees and customers. Both suspected Mr. Todman was not showing up to work. Even before then, Ms. Rivera-Beckno performed a routine base visit and identified multiple shortcomings on the physical status of the base. As GM, Mr. Todman was responsible to maintain it, but was not.

Ms. Rivera-Beckno decided she wanted to terminate Mr. Todman's employment on January 9, 2024. Earlier that day, Mr. Todman actually got into a heated argument

with a customer. The customer had previously requested that Signature fix his hangar door. Several days passed with no action. So the customer complained to Mr. Todman about Mr. Todman's inaction on the request. In other words, the customer was following up with Mr. Todman when this exchange occurred. This is when, as the customer reported, Mr. Todman "spoke to him in an aggressive and libelous manner in response."

In response to her learning of this latest customer service failure on Mr. Todman's part, Ms. Rivera-Beckno emailed Mr. Moran instructing Mr. Moran to "get him gone." See Exhibit 3. On January 11, 2024, two human resources representatives, including Cynthia Trombley, met with Ms. Rivera-Beckno to discuss performing an investigation into the incident and to determine whether Mr. Todman acted inappropriately and if Ms. Rivera-Beckno's request to terminate was justified. On January 13, 2024, the customer later put his complaint in writing through Signature's complaint system. The written complaint is included with Exhibit 3.

Around the same time, another customer was having an issue locking down office space to rent due to Mr. Todman. That customer also made a written complaint in the customer complaint system on January 15th. On January 15, 2024, that tenant experienced a poor visit to FTY and complained about it in a survey response about Mr. Todman's team's lack of professionalism and mistreatment that occurred on January 10, 2024.

Ms. Rivera-Beckno learned of this at **8:11pm** on January 15, 2024. She saw that this location was tail spinning out of control during the early phases of the investigation to confirm her decision to terminate. At **8:14pm** Ms. Rivera-Beckno scheduled a call for the next day (January 16) with Ms. Trombley and Mr. Moran to further discuss Mr. Todman's issues and a base management plan. Less than an hour later, Mr. Todman emailed Ms. Trombley at **8:58pm** indicating "his desire to seek EAP" concerning "a lot" of work tasks that he needed to handle, but could not finding it "overwhelming." Both the 8:14 calendar invite and Mr. Todman's 8:58pm email are attached as Exhibit 4.

The January 16, 2024 call proceeded as planned. Mr. Todman was then told that Ms. Rivera-Beckno and Ms. Trombley would visit FTY the following week to complete the investigation into the customer matters. In the meantime, the customer lease issue had not yet been resolved and both Mr. Moran and Ms. Rivera-Beckno had to continue to work on this issue that Mr. Todman should have been able to resolve without assistance. All of this occurred in the week or so following Ms. Rivera-Beckno's decision to "get him gone" while arranging to do the investigation into the incident that prompted it.

### IV. Mr. Todman's Request for Leave.

On January 18, 2024, Mr. Todman notified Mr. Moran and Ms. Trombley that he had an emergency call with EAP counselors and the Veterans Affairs crisis intervention center. He requested sick time and a leave of absence beginning January 18, 2024. Signature's leave department approved Mr. Todman for FMLA leave shortly afterwards.

## V. The Investigation Into Mr. Todman's Performance Issues.

On January 23, 2024, Ms. Rivera-Beckno and Ms. Trombley performed an in-person investigation at FTY and spoke in-person with the customers and other employees at FTY. The investigation concluded that Mr. Todman did act inappropriately towards a customer and exhibited other performance issues. The team thus planned to terminate Mr. Todman's employment upon his return from leave.

## VI. Mr. Todman's Alleged Inability to Work and Request for Indefinite Leave Resulting in Separation of Employment.

Signature provided Mr. Todman with FMLA leave due to alleged anxiety from January 18, 2024, through April 19, 2024, when the FMLA leave exhausted. Shortly before then, on April 11, 2024, Signature explored whether Mr. Todman would be able to return to work on April 19, or if he needed additional leave of absence as an ADA reasonable accommodation. To do so, Signature's Leave Department sent Mr. Todman a Confidential Functional Medical Information Questionnaire ("CFMQ") to be completed and returned by his medical provider.

On April 25, 2024, Signature received from Mr. Todman's medical provider, the completed CFMQ. **See Exhibit 5.** His medical provider indicated that Mr. Todman had symptoms related to chronic post traumatic stress disorder. For example, he could not cope with anger, fear, hostility or stress and could not demonstrate a high degree of patience such that he could not return to work. His medical provider indicated that Mr. Todman could not return to work and responded "N/A" in response to whether any reasonable accommodations could help him perform his job. In response to the sixth and final question on the CFMQ, asking if an additional period of leave would assist him to return to work in the near or foreseeable future, the medical provider responded, "Unknown."

Unable to work, having suggested no reasonable accommodation, and without any assurance by his medical provider that more leave would help his situation, Signature denied Mr. Todman's request for more leave, since he needed and was asking for an indefinite leave of absence. See Mr. Todman's termination letter enclosed as **Exhibit 6.**

## VII. Legal Analysis

### A. Mr. Todman cannot establish a *prima facie* case of discrimination.

The ADA prohibits employers from discriminating against "qualified individuals" on the basis of disability. A "qualified individual is a person who, with or without reasonable accommodations, is able to perform the essential functions of the job he holds or desires. 42 U.S.C. § 12111(8). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he had a disability, he was a "qualified individual" and that he was subjected to unlawful discrimination because of his disability.

Mr. Todman is not a "qualified individual" and thus can find no relief from the ADA. An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide a reasonable accommodation for the disability unless doing so would impose an undue hardship on the employer. An accommodation is reasonable only if it allows the employee to perform the essential functions of their jobs presently or in the immediate future.

Mr. Todman's medical provider responded "Unknown" when asked if he could state "with a degree of medical certainty that an additional period of continuous leave from work to receive treatment and/or recover will allow him … to resume to safe and successful performance of his … essential job functions in the near or foreseeable future.   In other words, the doctor could not determine if Mr. Todman would be able to return to work or when.  Mr. Todman was essentially requesting leave (he couldn't work) with no return date, making it a request for indefinite leave. It is well established that a request for indefinite leave, *i.e.*, one with no return date, is unreasonable as a matter of law.  As such, Mr. Todman's employment was terminated, since no reasonable accommodation would permit him to return to work or perform the essential functions of his position in the near or foreseeable future. That is, he was not a qualified individual and not protected by the ADA.  His charge on this basis must be dismissed.

### B. Mr. Todman cannot show retaliation.

To establish a prima facie case of discriminatory retaliation under the ADA, an employee must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. As stated above, Signature terminated Mr. Todman's employment because he could not perform the job, with or without a reasonable accommodation.  He needed and requested leave for an indefinite period of time—an unreasonable accommodation as a matter of law.  The ADA does not prohibit Signature from separating his employment under these circumstances.

But that aside, since the events outlined above occurred in a few weeks, Mr. Todman may believe he was separated due to his request for an accommodation and disclosing he had an alleged disability.  But the law and timeline shows that path will not lead him to a successful claim. First, Ms. Rivera-Beckno made the decision to terminate him on January 9 ("get him gone"), *before* Mr. Todman ever suggested he needed leave. "When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).  Indeed, "[e]mployers need not suspend previously planned [adverse actions] upon discovering that [the employee engaged in a protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatsoever of causality." *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 272 (2001).  To the extent he could have eventually returned

to work, which his doctor stated was unknown, his employment would have lawfully ended regardless along previously planned lines.

## VIII. Conclusion

Since Mr. Todman provided none in the charge, if Mr. Todman provides the Commission with any factual assertions beyond his beliefs and unsupported conclusions in response to this letter, Signature would appreciate the opportunity to respond in kind.

Signature takes discrimination complaints very seriously and denies Mr. Todman was discriminated against.  His termination was because he was not a qualified individual under the ADA: his inability to perform the essential functions of the position with or without a reasonable accommodation.  He is thus unable to prevail on any ADA claim. Signature, therefore, respectfully requests the Commission find the charge to be without merit and issue a "No Cause" determination.

Sincerely,

Matthew A. Klein, Esq.
Senior Counsel, Litigation and Employment
Matthew.Klein@SignatureAviation.com
Direct Line: (407) 206-5291

November 8, 2024

Submitted via Online Portal
U.S. Equal Employment Opportunity Commission

RE: Mitchell Todman v. Signature Flight Support
EEOC Charge No.: 11B-2024-00449

Mitchell Todman's Rebuttal/Response to Signature Senior Counsel Matthew A. Klein's letter to
Investigator Suk dated October 28, 2024

I, Mitchell Todman, am providing this response letter to refute claims made by Signature Flight
Support LLC dba Signature Aviation, as well as clarify facts. Please note my claim is not
baseless and my request for leave was for a specific timeframe and not indefinite. My disabilities
are not alleged and I find it offensive for Signature to assert such a claim. I have a documented
disability as a U.S. Army Veteran and the manner in which I was treated by Signature was
exasperated during my employment. Furthermore, Signature's assertion that I could not perform
with or without a reasonable accommodation is erroneous. Please also note, the employee
handbook for base STT, which I signed, is different from the employee handbook for the
continental U.S. Signature bases. A different employee handbook was created specifically for
base STT given the employment laws, geographic location, number of employees, etc.

## I. Signature's Lack of Compliance with Discrimination Laws

Undue hardship and direct threat are the only legitimate reasons for denying a reasonable
accommodation request from a qualified employee with a disability. I made no threats and my
reasonable accommodation request was for continued medical treatment for 1-hour per day for
12-weeks. Signature's response letter included an Exhibit 5 which is a copy of the medical
questionnaire completed by my medical representative. I encourage EEOC representatives to
engage VA Social Worker Kettely Johnson on this matter. Due to HIPPA laws she may not be
able to give specifics but what she can confirm is that I completed numerous VA medical
appointments via video. If need be, I can also provide a printout of my previous VA
appointments which lists numerous appointments via video. Therefore, my reasonable
accommodation for 1-hour per day for 12-weeks would not create a hardship for Signature.
Notably, the base I managed had open business hours from 0600-2200 with periodic extended
hours based on customer requests. As the GM, I could and have numerous times in the past,
adjusted my on-site hours to include early morning, late evening, weekends, etc. Therefore,
allowing me to continue flexing my hours to accommodate my remote video medical
appointments would not cause a hardship.

Unfortunately, Signature did not even engage me for an options discussion on how the medical
appointments could be accommodated. Why? Signature had already decided on January 9,
2024 to unjustifiably terminate my employment before engaging me for my input or version of

events. As noted by Regional VP Sanchia Rivera-Beckno's email to Director Jay Moran dated January 9, 2024 in which she stated, "get him gone."

**NOTE:** Regional VP Sanchia Rivera-Beckno also used intimidation tactics which directly contributed to my need for medical treatment.

Witness Ohron Thomas, who is the former Signature FTY Duty Manager, can confirm that during a FTY site visit in November/December 2023, RVP Sanchia Rivera-Beck told me, "get rid of him before my next visit" regarding Ohm Supervisor Todd Importuner Sanchia Rivera-Beckno did not give specifics on why I needed to unjustifiably terminate Ted's employment. I informed HR Business Partner Cynthia Trimble of Ted's desire Cynthia simply commented about Ted's desire to resign that he agreed to that man future I reminded HRBP Cynthia that I cannot initiate termination action against Ted and justifiably but nothing was done to address RVP Sanchia's directive for me to terminate an employee without cause. I took no action to terminate Ted's employment as he did resign weeks later for a job with Signature's competitor. How to comply with RVP Sanchia's unjustifiable directive was stressful.

RVP Sanchia Rivera-Beckno also undermined my authority as well as the authority of Duty Manager Ohron Thomas as well as Operations Supervisor Nathan Walker. RVP Sanchia Rivera-Beckno would engage base tenant Lyndon Lamott directly and subsequently give me direction based on what Lyndon requested directly from Sanchia. This circumventing process caused significant stress and directly contributed to my need for medical treatment. I notified RVP Sanchia Rivera-Beckno that Lyndon Lamott was in essence stealing space at my FTY base by occupying space he was not authorized to occupy. RVP Sanchia Rivera-Beckno ignored my comments and gave Lyndon whatever he wanted which caused problems for myself as well as my Duty Manager Ohrohn and Ops Supervisor Nathan Walker.

It is important to note that RVP Sanchia Rivera-Beckno was promoted to RVP in October 2023 and engaged in a pattern of discrimination and highly suggestive behavior from the time of her promotion until my separation from Signature. I interviewed for the Area Director position with Sanchia in October/November of 2023 to my dismay, Sanchia mentioned Jay Moran several times to me during the interview process as someone I should emulate and how great Jay Moran is overall. I have never interviewed for a position where the interviewer is mentioning another candidate incessantly. Sanchia subsequently promoted Jay Moran to the position of Area Director. This was a problematic situation for me. Why? Before Sanchia's promotion, she was an Area Director and Jay Moran was the GM reporting to her. Sanchia gets promoted and Sanchia clearly already made a decision on who she wanted as an Area Director. Signature claims to not discriminate but there is a significant difference between what is written as policy versus reality.

## II.   Mr. Todman's True Employment

My start date of September 23, 2019 as the GM for STT is correct. However, the comment that I was unsuccessful and as a result was transferred to another base is blatantly false. STT is listed

as Signature's longest/most-difficult/worst acquisition. Upon my hire, SIT would be 100% acquired by Signature in November 2019. However, Signature retained the minority 49% owner for 2-years past the initial 100% acquisition date. Once Signature acquired 100%, the damage was already in place as committed by employees hired by the majority owner. Money and time was prompted me to engage HQ and the audit team to investigate. The supervisor hired by the majority owner was subsequently fired but again, the damage was significant. Why is this important? All Signature STT decisions were made by the majority owner, Michael Hancock. I served as Signature's minority owner GM for four companies on STT, St. Thomas Jet Center, Alliance Aviation, Jet Set Auto Rental, and Tri-Island Energy. This botched acquisition to buyout the remaining 51% from the majority owner coupled with Signature's lack of investment and knowledge/experience regarding TRI-Island Energy as a fuel acquisition/distribution/retail operation in the Caribbean directly lead to STT's downward trajectory. Signature treated STT as a foreign country and did not provide the personnel, tools/equipment, support, etc. needed to make STT successful. The director of the audit team Basil, I can't recall his last name, even mentioned his bewilderment for Signature not giving STT what it needs such as fuel accountability for TRI-Island Energy and he would make recommendations for STT to be better supported but that never occurred.

Additionally, I applied for, interviewed, and secured the FTY GM position on my own. I was not transferred as stated by Matthew Klein in his response letter. The wording of Matthew Klein's letter was designed to mislead. If I was unsuccessful, why would Signature keep me as a GM and more importantly, where is the corrective action relative to me being unsuccessful on STT as wrongfully claimed by Matthew Klein? Again, I applied for the position and I secured it accordingly. My relocation from STT to FTY was not a punishment for STT being unsuccessful as mentioned by Matthew Klein.

**NOTE:** Former Latin America - Caribbean Area Director, Thomas Harper, can confirm the litany of issues with the STT acquisition which were beyond my control. Thomas Harper can also confirm that I applied for the FTY GM position and I was not transferred to FTY for being unsuccessful as mentioned by Matthew Klein.

### III.    Mr. Todman's Non-Existent Performance Issues

*Correction to Matthew Klein's statement* - RVP Sanchia Rivera-Beckno and Area Director Jay Moran did not assume their current RVP and AD positions respectively in January 2023 as stated by Matthew Klein. Sanchia and Jay assumed their RVP and AD positions in October and November of 2023. This can be easily verified.

*Clarification to Matthew Klein's statement* - The real estate issue at FTY definitely improved during my tenure as FTY's GM. One way that can be easily verified is by accessing FTY's real estate rate per square foot before my arrival to the rates during my tenure. The Real Estate department manager who later became the Real Estate Director and the Real Estate Manager who was hired during my tenure as FTY's GM, both admitted that FTY's real estate records were missing a lot of data and prior revenue was low as well as in need of time/attention which

was part of the issues not addressed by the previous GM, hence my arrival to the base. During my tenure as the FTY GM, the rates significantly improved (easily verifiable), I acquired new tenants and leases, removed non-paying tenants who were squatting for years, etc. FTY's Real Estate position/revenue improved significantly under my leadership. The issue with one problematic tenant, a real estate tenant, is that I also identified him as an entity who was underpaying. This action is what prompted Lyndon Lamott to falsify claims of mistreatment from me in which RVP Sanchia believed unfortunately although I had witnesses to the contrary. Many spaces at FTY lacked verifiable documentation although tenants occupied the spaces. Tenant Sea Cadets and another similar entity were but a handful of the entities I identified at FTY either without a valid lease, not paying rent at all, or underpaying for space. The accounting manager for FTY can verify the lack of payments, squatter(s), lack of lease, for tenants at FTY in which the accounting manager had to call me directly to give me a history of what the previous GMs tried but failed to finalize. Professionally, I did not share this information with Lyndon Lamott as it would not be prudent to divulge one tenants' information to another tenant. Lyndon Lamott took my approach to truly and finally paying attention to his years of 'getting over' as a personal vendetta. Regretful Sanchia believed him regardless of the evidence.

**NOTE:** It would be interesting to see the Microsoft TEAMS messages from the Real Estate team giving me kudos and thanking me for progress made. FTY was very far behind on real estate endeavors so it was quite a task.

*Clarification to Matthew Klein's statement* - RVP Sanchia Rivera-Beckno did perform a base visit in either October or November of 2023. However, it is important to note that due to very recent organizational changes and a renewed company wide approach to hospitality, Sanchia identified items/discrepancies based on a brand new directive from HQ. The items she identified, honestly most, were not items of significant focus prior to the new initiatives being implemented. Additionally, why did Area Director Isaac Lee, who performed several base visits prior to Sanchia's promotion and the implementation of the new hospitality focus, not find the same issues nor did he identify them? To state Sanchia's base visit identified so many issues without also qualifying the statement is misleading and in my opinion an attempt by Signature to simply find whatever they can and manipulate to construct a false narrative in support of their unrelated response to my claim of discrimination. The fact that Signature reported to GA Department of Labor that I resigned and Matthew Klein stated in his response to EEOC that I was terminated is a significant discrepancy and a crucial example of Signature making comments to fit their narrative while intentionally causing harm to me, the complainant. Moreover, RVP Sanchia applauded me/FTY for her base visit ~~as we~~/FTY also handled significantly more aircraft due to neighboring FBO PDK being partially/mostly shut down due to an aircraft incident and Sanchia was also impressed with some of our hangars, the GSE shop, practices in place, etc. The base visit was not all bad as ~~suggested~~ by Matthew Klein and again, new initiatives were recently implemented by the new COO Brad Williams.

**NOTE:** Please refer to Signature's Exhibit 6 in which the Separation Letter stated, "we have no choice but to end your employment with Signature Flight Support LLC effective April 26, 2024." However, Signature notified GA DOL Services Specialist Rhonda Mosley that I resigned. I

emailed **Rhonda Mosley a few times with** evidence of emails to Signature, a copy of Exhibit 3 Signature's termination letter, and a copy of Exhibit 5 the medical questionnaire completed by VA on my behalf. Ironically, Rhonda Mosley never responded to any of my emails and only called me on my cell phone to communicate. I found this method of communication to be odd especially since GA DOL Rhonda Mosley stated she confirmed with **Signature and Signature** stated I resigned. Regardless of the evidence I provided, Rhonda Mosley updated my GA DOL Unemployment Claim status to incorrectly reflect that since I resigned and was not terminated, I am not entitled to any unemployment benefits/payments Incensed, I emailed Rhonda Mosley, **no response again, and I also submitted an appeal to GA DOL Tribunal but I have not heard any updates in quite some time.** I have no proof but I assume Rhonda Mosley's actions were intentionally malicious and in collusion with Signature.

NOTE: Additionally, my termination letter was **issued to me via email from Leave Administrator** Erika Solomon. It is important to note that Erika Solomon was not my **supervisor, not in my chain** of command at all, did not cc my direct supervisor Jay Moran, and Erika also lacks the appropriate authority to terminate my employment.

Also, I do not agree with the narrative provided by Matthew Klein regarding my performance as it is once again misleading and provides false information. In five years as a GM for Signature, I have never received any disciplinary action of any type to include a Disciplinary Action Form (DAF), Corrective Action Form (CAF), documented verbal warning, written warnings, or suspensions. Signature might use/fabricate a Note to File in which someone can **simply write a document outlining a concern and place it in someone's file without speaking** to or **engaging the individual that a Note to File was placed in their employee file. I find it quite deceptive to mention** performance issues when none exists. Matthew Klein stated Ms. Rivera-Beckno decided she **wanted to terminate Mr. Todman's employment on January 9, 2024 based on a complaint from a tenant stating I got in his face and we argued as well as comments from FTY tenant Lyndon** Lamott. How can a determination be made to terminate without even having a discussion with the accused? I have engaged many tenants in my 5-years with Signature and i have never been accosted as I was with Joshua Jones.

NOTE: I met with Joshua Jones' supervisor, the owner of **Prestige Helicopters, and I informed** him of Joshua's aggressive and unprofessional behavior towards me. Interestingly, Joshua's complaint to Signature was almost verbatim of what I mentioned Joshua did to me. What **Signature strategically failed to mention is that I informed Area Director Jay Moran immediately** of the incident. Furthermore, Signature provided a copy of the Joshua Jones' complaint he submitted using Signature's comment system but Signature did not provide a copy of the email in which I replied to the complaint explaining what really happened. **Omitting my response email is a very deceptive move by Signature.**

Moreover, I have witnesses who can confirm my claims regarding Joshua Jones. I was in a conference room meeting with Ops. Supervisor Nathan Walker, Duty Manager Ohrohn Thomas, and another employee when Joshua Jones literally banged loudly on the conference room door and proceeded to open the door with invitation. The meeting was a sensitive meeting and

Joshua Jones was informed that we were in a meeting prior to him rudely and aggressively interrupting the meeting. I left the meeting and spoke to Joshua Jones in the lobby and I was certain the lobby cameras would see his aggressive and dismissive behavior toward me. I informed HRBP Cynthia Trombley, Area Director Jay Moran, and RVP Sanchia Rivera-Beckno of the cameras recording the behavior by Joshua Jones. However, Sanchia and or Cynthia stated the camera didn't show that. How interesting? Joshua mentioned a need to gain access to a door which was locked and contained paperwork he needed. The space was rented by his company, Prestige Helicopters, but was locked and he could not access the space. I took Ops. Supervisor Nathan Walker with me and we first walked over to Prestige Helicopter's first hangar where we engaged Joshua and Joshua's supervisor, the owner of Prestige Helicopter, in a conversation to gather information on how we could assist. Ironically, Joshua was not as upset as he was in the FBO so I figured he was pleased to see that we immediately dropped what we were doing to address his locked door concern.

Unfortunately, the keys Nathan and walked with did not open the door in question and Joshua once again started yelling and was quite upset. After we all walked into another hangar trying to find another way to access the space, I mentioned to Joshua that I would have a locksmith dispatched to open the door. That was not good enough for Joshua and his aggression and yelling intensified. I recognized the danger so I told Ops. Supervisor Nathan Walker that we would leave to head back to the office and the locksmith would be out soonest. As I was walking away, Joshua approached me from behind once again yelling and being aggressive. As I turned around Joshua was approaching me and he was the one who 'got in my face' as opposed to me getting in his face as he claimed. Joshua proceeded to mention that I haven't heard the last of this. I thought the fact that I had witnesses in the conference room, camera footage, and a witness present when Joshua aggressively approached me, I would be defended by my employer Signature Ops. Supervisor Nathan Walker also provided a written statement regarding the incident. Interestingly, Nathan's statement is also missing from Signature's list of exhibits.

**NOTE:** It is important to note Exhibit 3 the email from Allyson Snell to HRBP Cynthia Trombley in which Allyson Snell stated the complaint sounded more like "muting" than "building" and muting can't be held to standard.

Regarding tenant Lyndon Lamott, I will summarize by saying Lyndon Lamott is not being honest at all. Several factors to consider. Customer Service employee Angela Brown can provide a history of issues with Lyndon Lamott as Angela is the longest serving FTY employee. Once I arrived at FTY in March fo 2023, I was informed of Lyndon's lack of integrity by Shift Supervisor Ted Phillips, subsequently Angela Brown when she returned to Signature FTY after quitting months prior due to list of failures, lack of support, favoritism, investigations, etc. at the FTY base. I discovered Lyndon Lamott was stealing unauthorized space from Signature and I engaged Signature's real estate department to work on solutions. My email to Cynthia Trombley for EAP Assistance mentions ambiguous agreements as Lyndon's situation is related. In addition, Lyndon realized I was aware of him occupying space he was not authorized to occupy and so Lyndon 'weaponized' the complaint system for FTY and also engaged RVP Sanchia

directly whereby she would then undermine my authority and give Lyndon what he wanted regardless.

**NOTE:** Duty Manager Ohrohn Thomas and Ops. Supervisor Nathan Walker can confirm my claims regarding Lyndon Lamott as well as RVP Sanchia. Additionally, Nathan Walker is a ... ... ... *aggravating you*" during a meeting with Lyndon, Nathan and myself in my office. I informed RVP Sanchia of Lyndon's comments but not surprisingly, nothing was done.

Additionally, the KPIs and overall ... ... ... had ever been while I was the GM there so he ... ... ... ... ... ... went up. From my arrival to FTY in March/April 2023 to Mid January 2024, FTY's Overall Satisfaction (OSAT) scores were the highest in which the OSAT score is composed of customer satisfaction. Again, I have never had **any** disciplinary action but Sanchia arrives in October 2023 and in 3-months I am so awful I need to be terminated based on fabricated complaints where I did not get a chance to provide a defense.

Moreover, Signature literally forced me to take mandatory vacation at the end of 2023 or I would lose vacation days. Therefore, I took vacation in December 2023 and during my vacation, I was harassed by RVP Sanchia Rivera-Beckno incessantly. Verifiable via phone records and Microsoft TEAMs calls at night and while I was on vacation. Sanchia would call me numerous times at night knowing that I was on vacation and even had Area Director Jay Moran call and harass me on vacation as well. RVP Sanchia's statement to me when I didn't answer one of her calls/emails quickly enough while on vacation was, "well that's why we have cell phones." I was forced to take vacation, I was traveling outside of the continental U.S. during my vacation, and the harassment from Jay and Sanchia only added to the stress I was supposed to be vacationing to relieve. I emailed Signature CEO Tony LeFebvre in need of a discussion regarding RVP Sanchia but not surprisingly, he did not respond.

### iv.    ... ... ... Request for Leave

My email to Signature on January 18, 2024 followed a phone call with HRBP Cynthia Trombley, RVP Sanchia Rivera-Benckno, and Area Director Jay Moran. During that call RVP Sanchia Rivera asked me several times wh ... ... ... The fact that Sanchia wanted me to somehow know what caused Joshua Jones to be so upset and in pt asking me the same was infuriating. RVP Sanchia and/or HRBP Cynthia Trombley stated Joshua Jones' version of events differed from mine but should not have been a surprise. I thought the fact that I had witnesses who could confirm Joshua's ... ... ... ... **footage as well** did nothing for my defense as Signature ... ... ... ... **heard versus witnesses** and video. Similarly, RVP Sanchia was already in collusion with Lyndon Lamott as she also inappropriately called me several times while I was on vacation to discuss how she could deal with Lyndon Lamott and she clearly favored Lyndon's side during the call as well. Ironically, the call on January 18th was not held previously and was pushed back to accommodate Area Director Jay Moran's vacation. When I was on vacation, RVP Sanchia and AD Jay Moran

called/emailed etc. although they both knew I was on vacation and my out-of-office auto-reply was turned on. Just another point of hypocrisy. Furthermore, due to time, we did not get to complete all of the issues on the call as Sanchia stated she had to go and we would revisit.

*NOTE: As Georgia is a one-party consent state, I recorded the January 18, 2024 phone call as evidence.*

HRBP Cynthia Trombley automatically engaged HQ Leave Administrator Erika Solomon who subsequently initiated FMLA. Matthew Klein's comments regarding steps/process to request leave are irrelevant. I engaged HR and HR engaged the Leave Administrator who guided the FMLA process.

**NOTE:** I posed questions in my emails to HRBP Cynthia Trombley and Leave Administrator Erika Solomon which went unanswered. The significant issue with Signature's lack of response to those questions is that the information I requested were to be used as part of the decision making and discussion regarding my reasonable accommodations and treatment with VA. Signature claimed my  information but if Signature provided the information I requested not once but twice, the response provided and subsequent end result may have been different. Essentially, Signature ignored my multiple requests for information regarding my previous ER visits in which Signature was aware/notified, refused to reasonably accommodate me as a Disabled Veteran, and failed to even engage in reasonable accommodations discussions/dialogue.

**NOTE: Please see Exhibit A** which contains email(s) between myself, HRBP Cynthia Trombley, and Leave Administrator Erka Solomon where my requests for information regarding leave balances, my previous ER visits, etc.

## V.    The Investigation Into Non-Existent Performance Issues

I believe the comments I provided previously in this response addresses this topic. Again, in 5-years I have no disciplinary action against me other than Signature's unlawful termination. Regarding two customer complaints, I hope the witnesses are engaged to provide their version of events to be considered. Additionally, FTY's overall performance improved during my tenure as the GM  because of my leadership. I regret not saving more work emails and rea      with the HRBP Cynthia would also prove very useful now but I did not record any other conversations with HR and I am certain HRBP Cynthia Trombley will provide a narrative contradictory to anything I claim.

**NOTE:** I engaged HRBP Cyn     currently recall, in August/September of 2021 regarding      ers as my HRBP. I stated that Cynthia has a habit of not wanting me to put things in writing and would prefer that I just speak with an employee only. For example, when I first arrived at FTY, Cynthia informed me of the numerous investigations previously conducted at the base and the fact that

the employees lacked accountability. Therefore, I established formal meetings with the staff. Specifically however, Cynthia informed me that Line Service Technician Tim was given a raise recently which was several dollars higher than any other employee and Tim was also the only employee receiving differential pay as well as a company-paid cell phone. I created formal documents/memos and emailed them to Cynthia and she instructed me to not put anything in writing. This approach and the like lead many of the employees to garner a sense of hatred toward me as the new base leader. I mention this because documentation versus verbal is more professional and does not rely on memory. Moreover, I complained to Cynthia's supervisor that she is biased towards the then Area Director, Isaac Lee, and was intimidated to speak up and tell the truth during one of Isaac Lee's base visits in which the same Line Service Technician, Tim, complained to Isaac that I took away his pay/money. My significant issue with this scenario is that HRBP Cynthia knew she was the person who initiated the removal of Tim's pay yet remained silent and allowed the Area Director to think that I was being vindictive. This approach deepened a divide between myself and Cynthia. I proceeded to provide other instances of Cynthia's biased approach but as with all of the other complaints I brought forth, nothing was done. Cynthia would not be able to objectively assess any matters and I do believe once her supervisor informed her of my complaints, Cynthia's ability to be objective would be compromised as evident in her ignoring my requests and concluding that I acted inappropriately although the evidence states quite the opposite.

## VI.    Signature's Significant Error and Misunderstanding

Please read carefully the verbiage provided by Mattew Klein in section VI of his response letter and compare it to the verbiage provided in the Exhibit 5 medical questionnaire. A lot of what Signature provided as a response is disappointing, misleading, and false but the verbiage in section VI of Matthew Klein's response is also quite troubling. Therefore, I will not provide a long response in this section as I do believe the verbiage in my questionnaire is clear. The questionnaire is asking for me to have 1-hour for 12-weeks. I have disabilities, a reasonable accommodation was requested, Signature ignored the specifics of the request, did not engage me in a discussion to accommodate for 1-hour for 12-weeks, immediately terminated my employment, provided false information to GA DOL stating I resigned versus being terminated, and all of what Signature did caused additional harm in several ways to include financial, emotional, physical, psychological, etc.

**NOTE:** Leave Administrator Erika Solomon stated in the **Exhibit A** email to me that she was assessing additional leave for under ADA as well. Again, no discussion on accommodations/options, Signature decided to simply illegally terminate my employment.

## VII.    Signature's Continued Misunderstanding

Again, in referencing my medical questionnaire, the VA is stating my treatment time-frame of 1-hour for 12-weeks is the course of action to be taken to address the stressors. If a solution to a problem is identified and a definitive timeframe, not indefinite, for completion of the course of action is also identified, reasonable accommodation action should be taken. Instead, Signature

chose to ignore the facts, fabricate stories, ignore evidence, ignore requests for information during the medical leave process, operate in a hostile/harassing/retaliatory manner, lie to GA DOL, and unjustifiably terminate my employment.

**NOTE:** Signature's actions have now directly caused additional damage as I seek remedy for their unjustifiable acts. How? I am now 100% Permanently and Totally disabled as a direct result of Signature's actions and I have not been employed since the April 26, 2024 termination notice. Verifiable with the VA and a request for my medical records will show the reason for my visits to the ER. Again, I have been to the ER multiple times due to Signature's actions and the manner in which I was treated as an employee. It is important to note that dealing with a certain amount of work-related stress is understandable as listed in the job description but Signature's undermining authority actions, false and misleading statements to include ignoring witnesses/facts, Signature leadership continuously harassing me while on leave/vacation, being assaulted while at work performing for Signature, Signature failing to appropriately support STT operations and withholding safety equipment which put lives in danger and directly lead to fuel supplier PUMA from Puerto Rico having to pull the Spirit Airlines contract, allowing the majority owner to lead STT operations in contrast to Signature's wishes and blaming me for the failures for two years past the date of acquisition promised to me at hire, poorly acquiring the STT operations and not providing me with the contracts needed/data needed to be successful, etc. Former Latin America Caribbean Director, Thomas Harper, can confirm instances of me being in a meeting and my customer informs me of a binding contract I/STT must accommodate unbeknownst to me but later confirmed by Signature HQ. These types of surprises made STT an impossible base to properly lead as I was never provided with what I needed to be successful.

## VIII.   In Summation

**Former Duty Manager Ohrohn Thomas (404) 610-8985** is a witness to Joshua Jones' initial aggression storming into my closed-door meeting and being rude/irate. Ohrohn can also attest to a litany of unethical and undermining behavior by Lyndon Lamott as well as Sanchia and Jay Moran. Ohrohn is also a witness to RVP Sanchia directing me to terminate Shift Supervisor Ted Phillips in an intimidating manner stating, "get rid of him before my next visit." Additionally Ohrohn Thomas also endured a significant degree of mistreatment from Signature causing him to also require abrupt medical intervention as a direct result of Signature's actions. Ohrohn subsequently resigned as a result of Signature's treatment.

**Former Operations Supervisor Nathan Walker (414) 688-4394** is also a witness to Joshua Jones' initial storming into my closed-door meeting and being rude/irate. Additionally, Nathan Walker witnessed Joshua Jones continue his aggression toward me in a hangar and on the ramp at FTY where Joshua Jones aggression amounted to assault but not battery where Joshua approached me aggressively and got in my face touting threats. Nathan Walker is also a witness to Lyndon Lamott stating he enjoys aggravating me during a meeting in my office. Furthermore, Nathan is also witness to Lyndon Lamott's unethical and undermining behavior to include Lyndon weaponizing FTY's complaint system to create a false narrative; and Ohrohn

can attest to this as well. Nathan is also a victim of RVP Sanchia and AD Jay Moran undermining his authority, Ohrohn authority, as well as my authority as the base GM. Similar to Ohrohn, Nathan Walker also required emergency medical intervention as a direct result of Signature's treatment toward him. Nathan also resigned as a result of Signature's treatment.

**NOTE:** Myself, Ohrohn, and Nathan all felt that Signature was intentionally setting us up for failure by not providing us with what we needed to be successful. I hope EEOC's conversations with Ohrohn and Nathan will thoroughly assess that aspect as that is the methodology signature continually uses to make it appear that the employee is failing when in fact it is a setup by Signature. Note the fact that I have never been disciplined, my base was thriving, we received new leaders who wanted to put their preferred people in place, which is exactly what happened, and suddenly myself and my team are horrible and need to be terminated.

**NOTE:** Sanchia was promoted and chose Jay Moran given her relationship with him at Signature base IAD and despite repeatedly mentioning Jay to me during my interview process for the job Jay Moran subsequently received. Jay Moran, from base IAD, put Hunter Harwell, from base IAD, in place as the FTY GM. It's not a coincidence and it seems more like nepotism. The new leaders wanted their people in place so myself, Ohrohn, and Nathan had to go so Signature had to find creative ways to push us out.

**Former Latin America Caribbean Director Thomas Harper (246) 262-1440** is my former supervisor while I managed operations in base STT and he can attest to the litany of problems with STT's acquisition, theft, lack of Signature HQ support, and the fact that I interviewed for and and earned the FTY GM position as opposed to being transferred there as some sort of punishment as implied by Matthew Klein.

**HRBP Kerry-Ann McCollin (246) 262-2180** is the HRBP in the Caribbean and has direct knowledge of base STT's difficulties. She can also confirm that I interviewed for the FTY GM position appropriately and it was not a punishment relocation. Additionally, Kerry-Ann still works for Signature so EEOC may be able to engage her in a private/secure conversation where I believe she may be inclined to reveal quite a bit more in support of my claims.

**NOTE:** Engaging the Real Estate Director and Real Estate Manager would also provide some information in support of my claim regarding FTY's real estate status. Unfortunately, I cannot recall their names.

Signature needs to be held accountable for the significant damage inflicted upon me by their actions/inaction. Signature is a huge world-wide organization but they are reactive as opposed to proactive in dealing with issues. My claim is clear and objective with no prior performance issues and an improvement to base FTY's performance until RVP Sanchia and AD Jay Moran decided to push-out the black guys from FTY and replace them with others of their choice. Signature has proven to be untrustworthy by informing GA DOL I resigned while also now informing EEOC that I was terminated; it can't be both. My claims are not fabrications, I have witnesses, and I am not the only person who has endured this unfair treatment from Signature. I

truly hope I have the opportunity under oath to once again reiterate what I stated in this written response. If I were to divulge all of the issues with Signature and how I have been mistreated for so long, especially during my tenure as the STT GM, it would be nothing short of a novel. I look forward to EEOC thoroughly investigating and engaging the witnesses in an attempt to remedy this unjustifiable action. Signature wants a "No Cause" determination to be made as it would tarnish their reputation but Signature must accept responsibility and cease operating in this manner. I am confident once all of the facts are appropriately assessed, the truth of the matter will be clarified for the Signature Organization to see the errors made by its personnel.

Mitchell Todman, MBA



# Team Member
# Handbook

St. Thomas, U.S. Virgin Islands 2021

*This Team Member Handbook dated 4/1/2021 replaces and supersedes all prior Team Member Handbooks.*

# TABLE OF CONTENTS

WELCOME MESSAGE ........................................................................................................ - 6 -

ABOUT THIS HANDBOOK ................................................................................................. - 7 -

TRANSLATION OF HANDBOOK ....................................................................................... - 7 -

HISTORY ............................................................................................................................. - 7 -
   Signature Flight Support & Signature TECHNICAir ....................................................... - 7 -
   SIGNATURE Aviation ..................................................................................................... - 8 -

WHAT'S IMPORTANT ......................................................................................................... - 8 -

STATEMENT OF CORPORATE SOCIAL RESPONSIBILITY ........................................... - 9 -

COMMITMENT TO DIVERSITY .......................................................................................... - 9 -


EQUAL EMPLOYMENT OPPORTUNITY (EEO) AND AFFIRMATIVE ACTION POLICY (AAP) .. - 9 -
  RESPONSIBILITIES ......................................................................................................... - 9 -

DISABLED INDIVIDUALS AND PROTECTED VETERANS ............................................. - 10 -
  COMMITMENT TO EQUAL OPPORTUNITIES ................................................................ - 10 -
  REQUESTING A REASONABLE ACCOMMODATION ...................................................... - 10 -
   Medical Information ........................................................................................................ - 11 -
   Determinations .............................................................................................................. - 11 -
  PROTECTED VETERANS ................................................................................................ - 11 -

INTRODUCTORY PERIOD ................................................................................................. - 12 -

OPPORTUNITY ................................................................................................................... - 12 -

TEAM MEMBER TRAINING AND ADVANCEMENT ......................................................... - 12 -

CLASSIFICATIONS ............................................................................................................ - 13 -
  NON-EXEMPT/EXEMPT .................................................................................................. - 13 -
  FULL-TIME ...................................................................................................................... - 13 -
  PART-TIME ...................................................................................................................... - 13 -
  SEASONAL ...................................................................................................................... - 13 -

LANGUAGE ......................................................................................................................... - 14 -

DISCRIMINATION, HARASSMENT, AND RETALIATION PREVENTION ... - 14 -
  DISCRIMINATION AND HARASSMENT ......................................................................... - 14 -
  RETALIATION .................................................................................................................. - 15 -
  COMPLAINT PROCEDURE ............................................................................................. - 15 -

EMPLOYMENT OF RELATIVES & OTHERS .................................................................... - 16 -
  IMMEDIATE FAMILY ....................................................................................................... - 17 -

make the request orally or in writing. The Company encourages Team Members to make their request in writing and to include relevant information, such as:

- A description of the accommodation you are requesting.
- The reason you need an accommodation.
- How the accommodation will help you perform the essential functions of your job.

After receiving your request, the Company will engage in an interactive dialogue with you to determine the precise limitations of your disability and explore potential reasonable accommodations that could overcome those limitations. The Company encourages each Team Member to suggest specific reasonable accommodations that the Team Member believes would allow performance of the essential job functions. However, the Company is not required to offer the specific accommodation requested by the Team Member and may provide an alternative, effective accommodation, to the extent any reasonable accommodation can be made without imposing an undue hardship on the Company.

## MEDICAL INFORMATION

If your disability or need for accommodation is not obvious, the Company may ask you to provide supporting documents showing that you have a disability within the meaning of the ADA applicable State, territorial or local laws, and that your disability necessitates a reasonable accommodation. If the information provided in response to this request is insufficient, the Company may require that you see a health care professional of the Company's choosing, at the Company's expense. In those cases, if you fail to provide the requested information or see the designated health care professional, your request for a reasonable accommodation may be denied.

The Company will keep confidential any medical information that it obtains in connection with your request for a reasonable accommodation.

## DETERMINATIONS

The Company makes determinations about reasonable accommodations on a case-by-case basis considering various factors and based on an individualized assessment in each situation.

The Company strives to make determinations on reasonable accommodation requests expeditiously and will inform the individual once a determination has been made.

If you have any questions about a reasonable accommodation request you made, please contact your local human resources representative at **HR Services** via **HRServices@signatureflight.com** or (800) 428-5554.

PROTECTED VETERANS

Consistent with federal, state, territorial and/or local law, the Company does and will take affirmative action to employ, advance in employment, and otherwise treat qualified individuals with disabilities and covered veterans without discrimination based upon their physical or mental disability or veterans' status in all employment practices.

All Team Members who consider themselves classified as stated above are invited to volunteer this information to their human resources representative only after they are employed. The purpose is to provide information concerning proper placement and appropriate accommodations to enable them to safely and effectively perform their jobs. This information is considered confidential and will be treated as such. Team Members who elect not to supply this information will not be adversely affected in any employment consideration.

case of any Team Member who fails to adhere to our equal employment opportunity and affirmative action policies.

All Team Members must not only refrain from discriminatory activities but are also responsible to report any occurrences pursuant to the reporting procedure provided in the Company's Harassment policy. Any Team Member having questions regarding our EEO/AAP policy or its implementation may discuss the matter with their local or Corporate Human Resources Representative.

## DISABLED INDIVIDUALS AND PROTECTED VETERANS

### COMMITMENT TO EQUAL OPPORTUNITIES

The Company complies with the requirements of the Americans with Disabilities Act ("ADA") and will reasonably accommodate, if possible, a qualified individual with a physical or mental disability impairment that substantially limits a major life activity. It is the responsibility of the Team Member to bring the need for accommodation to the attention of the Company.

The Company may require a statement from a qualified health professional as part of the accommodation process. The Company also reserves the right to require an independent medical or psychiatric/psychological evaluation of the Team Member as permitted by federal, state, and/or local law.

The Company may allow service, assistive, or support animals for a person with disabilities in compliance with the ADA. Team Members requesting a reasonable accommodation must contact Human Resources. In considering requests for reasonable accommodations, the Company will engage in the interactive process and look at a number of factors including whether the Team Member's proposed accommodation poses an undue hardship for the Company.

If Team Members, including managers and supervisory personnel, observe a violation of this policy or believe that they have been subject to discrimination, it must be reported promptly using the detailed Complaint Procedure as outlined in the Discrimination, Harassment and Retaliation Prevention section below. The Company will promptly investigate any complaint and take appropriate preventative and/or corrective action. The Company prohibits any form of retaliation against any Team Member for filing a good faith complaint under this policy, for assisting in the investigation of a complaint, or for requesting a reasonable accommodation for a disability or religion, regardless of whether the request was granted. A Team Member who feels that they have been retaliated against for filing a complaint, for participating in an investigation or for requesting a reasonable accommodation for a disability or religion, regardless of whether the request was granted must also promptly use this complaint procedure. False or malicious complaints of harassment, discrimination or retaliation, as opposed to complaints which are not substantiated but are made in good faith, may be subject to appropriate disciplinary action.

To file a complaint, see the detailed Complaint Procedure in the Discrimination, Harassment and Retaliation Prevention Policy. Violation of this policy may result in disciplinary action, up to and including termination.

### REQUESTING A REASONABLE ACCOMMODATION

If you believe you need an accommodation because of your disability, you are responsible for requesting a reasonable accommodation from your Human Resources Representative or by contacting **HR Services via HRServices@signatureflight.com.** You may

## STATEMENT OF CORPORATE SOCIAL RESPONSIBILITY

Sustainability is core to SIGNATURE Aviation's vision, mission, values and goals and to the way we do business. Sustainability requires us to manage our impact on, and contribute positively to, society and the environment. We do this by taking a responsible approach to the operation of our companies and the conduct of our Team Members.

The management and Team Members of Signature acknowledge our responsibility to conduct all business affairs in a thoughtful and responsible manner, taking into full account the ways in which our business affects our workforce, their families, the community and the environment.

We will identify and support opportunities in the communities where we operate, through involvement and charitable giving. Signature encourages Team Members to volunteer their time and talent to the organizations selected by their location, as well as those of their own choosing.

We acknowledge and agree to abide by the policies and procedures contained in the Handbook in support of these principles.

## COMMITMENT TO DIVERSITY

Diversity is about recognizing, and valuing individual differences in background, knowledge, skills, value systems, and experiences. It is about utilizing and encouraging those individual differences to create a more productive and effective workforce.

Managing diversity will help Signature nurture creativity and innovation. It will enable us to grow globally and improve competitiveness. Diversity will ensure that teams are inclusive and develop into high performing units with a common purpose.

## EQUAL EMPLOYMENT OPPORTUNITY (EEO) AND AFFIRMATIVE ACTION POLICY (AAP)

The Company is committed to equal employment opportunity for all qualified persons, without regard to race, color, national origin, ancestry, religion, age, mental or physical disability, veteran status, military status, medical condition, sex, marital status, sexual orientation, gender, gender identification, gender expression, genetic characteristics and/or any other consideration based on applicable federal, state, and/or local law. It also prohibits unlawful discrimination based on the perception that anyone has any of these characteristics or is associated with a person who has or is perceived as having any of these characteristics.

The Company expects all Team Members to show respect and sensitivity towards all other Team Members, and to demonstrate a commitment to inclusion and the Company's equal opportunity objectives.

The Company's Equal Employment Opportunity Policy and Affirmative Action Policy applies to discrimination, harassment, and retaliation in all aspects of employment decisions and employment, including, but not limited to, hiring, termination of service, pay, job assignments, promotions, layoffs, training, fringe benefits, or any other term or condition of employment.

**RESPONSIBILITIES**

Management should make special efforts to ensure that all Team Members reporting to them understand and effectively implement the policy. Management Team Members will be measured on their good faith efforts and commitment to our policy. All levels of Company management are responsible for the implementation of these policies. Corrective action will be taken in the

 **Gmail**

Mitchell Todman <mtodman18@gmail.com>

---

### Re: Mitchell Todman - FMLA Approval Notice
4 messages

---

**Mitchell Todman** <mtodman18@gmail.com>
To: "Admin, Leave (CHQ)" <LeaveAdmin@signatureflight.com>
Cc: cynthia.trombley@signatureaviation.com, erika.solomon@signatureflight.com, m_todman@hotmail.com

Thu, Apr 11, 2024 at 1:14 AM

Good Day,

The team handling my case wants me to ask HR/Admin-Leave the following question:

<u>What documentation is needed for Mitchell Todman to extend his leave of absence an additional three months</u>?

Another inquiry I have is regarding my sick leave and personal leave balances in UKG. I have 9 days of sick leave, 72hrs. I have 4 days of personal leave, 32hrs. Somehow I have -13 vacation hours, which is a mystery to me. Based on the FMLA documentation I received, I recall a comment stating my sick and vacation leave would be exhausted and paid to me during my FMLA leave. Can someone clarify?

Additionally, inclusive but not limited to, my current medial leave status/treatment was precipitated by and is a culmination of two emergency medical interventions while employed with Signature. One medical intervention was a visit to the emergency room in STT. SVP Geoff Heck, LACAR Director Thomas Harper, Safety Manager Rafael Diaz, and HRBP Kerry-Ann McCollin were all informed of my emergency room visit in May of 2022. I also had a second emergency medical intervention in January of 2024 which prompted my FMLA leave. Can any of the documents/notes/etc. generated by Signature regarding my STT emergency room visit be provided to me via email? Same for January 2024 as well?

Thanks in advance!

Mitchell Todman

> On Feb 2, 2024, at 5:42 PM, Admin, Leave (CHQ) <LeaveAdmin@signatureflight.com> wrote:
>
> Hi Mitchell,
>
> Your request for FMLA Continuous Leave for your own health condition is **approved**. Please review the attachments and important reminders listed below.
>
> - Your leave under **FMLA** is approved for the dates January 18,2024 – April 11,2024.
>   - This is your full 12weeks of FMLA entitlement.
>
> - Your leave period as an **accommodation** is approved for the dates April 12,2024 – April 18,2024.
>   - Your expected return to work date is <u>**April 19, 2024**</u>.
>     - If this date changes, please notify us as soon as possible. We will require an updated medical note.
>
> - **If you have not done so already**, please contact New York Life at 888-842-4462 to apply for Short Term Disability (STD).
>   - There is a 7-calendar day waiting period for STD, and all decisions concerning STD eligibility are made exclusively by New York Life.
>   - If approved, payments will be sent via current pay method and schedule.
>
> - Please send an email at least 3 days prior to your return-to-work date confirming your intent to return date.
>   - Failure to do so, could result in your return being delayed.
>   - If you will require restrictions, please have them noted on the attached and sent in for review prior to your return date.
>
> If you have any questions, please do not hesitate to contact me via leaveadmin@signatureflight.com.
>
> Be Well,

I

I

Erika Solomon, PHR | Leave Administrator

c. 407 955 0784

f. 407 641-0280

e. Erika.Solomon@signatureflight.com

Signature Aviation Field Support Center | 13485 Veterans Way | Orlando FL 32827

This message may contain confidential and/or privileged information. If you are not the intended recipient or believe you have received this message in error, please notify us immediately by responding to the sender and then delete this message from your system.

**10 attachments**

image001.png
4K

image002.png
1K

image003.png
1K

image004.png
1K

image005.png
1K

image006.png
1K

 **FMLA ADA Approval Notice.pdf**
233K

**WH-382.pdf**
275K

**NYL Short Term Disability Instructions.pdf**
348K

**Fitness For Duty Release.pdf**
203K

---

**Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>**                                                    Thu, Apr 11, 2024 at 10:12 AM
To: Mitchell Todman <mtodman18@gmail.com>, "m_todman@hotmail.com" <m_todman@hotmail.com>
Cc: "Trombley, Cynthia (SFS-MIA CORP098)" <cynthia.trombley@signatureaviation.com>

Hi Mitchell,

Hope all is well. They should complete the attached, once returned I'll use it to assess additional leave time under ADA, as you will be out of FMLA entitlement. Let me know if I can assist further.



**Erika Solomon, PHR**

Leave Administrator

(407) 955 0784

LeaveAdmin@SignatureAviation.com

13485 Veterans Way, Suite 600

Orlando, Florida 32827

---

**From:** Mitchell Todman <mtodman18@gmail.com>
**Sent:** Thursday, April 11, 2024 1:15 AM
**To:** Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>
**Cc:** Trombley, Cynthia (SFS-MIA CORP098) <cynthia.trombley@signatureaviation.com>; Solomon, Erika (SFS-C01 CORP398) <erika.solomon@signatureaviation.com>; m_todman@hotmail.com
**Subject:** Re: Mitchell Todman - FMLA Approval Notice

Some people who received this message don't often get email from mtodman18@gmail.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Day,

The team handling my case wants me to ask HR/Admin-Leave the following question:

What documentation is needed for Mitchell Todman to extend his leave of absence an additional three months?

Another inquiry I have is regarding my sick leave and personal leave balances in UKG. I have 9 days of sick leave, 72hrs. I have 4 days of personal leave, 32hrs. Somehow I have -13 vacation hours, which is a mystery to me. Based on the FMLA documentation I received, I recall a comment stating my sick and vacation leave would be exhausted and paid to me during my FMLA leave. Can someone clarify?

Additionally, inclusive but not limited to, my current medial leave status/treatment was precipitated by and is a culmination of two emergency medical interventions while employed with Signature. One medical intervention was a visit to the emergency room in STT. SVP Geoff Heck, LACAR Director Thomas Harper, Safety Manager Rafael Diaz, and HRBP Kerry-Ann McCollin were all informed of my emergency room visit in May of 2022. I also had a second emergency medical intervention in January of 2024 which prompted my FMLA leave. Can any of the documents/notes/etc. generated by Signature regarding my STT emergency room visit be provided to me via email? Same for January 2024 as well?

Thanks in advance!

Mitchell Todman

On Feb 2, 2024, at 5:42 PM, Admin, Leave (CHQ) <LeaveAdmin@signatureflight.com> wrote:

Hi Mitchell,

Your request for FMLA Continuous Leave for your own health condition is **approved**. Please review the attachments and important reminders listed below.

- Your leave under **FMLA** is approved for the dates January 18,2024 – April 11,2024.

    o **This is your full 12weeks of FMLA entitlement.**

- Your leave period as an **accommodation** is approved for the dates April 12,2024 – April 18,2024.

    o **Your expected return to work date is April 19, 2024.**

        § If this date changes, please notify us as soon as possible. We will require an updated medical note.

- **If you have not done so already**, please contact New York Life at 888-842-4462 to apply for Short Term Disability (STD).

    o There is a 7-calendar day waiting period for STD, and all decisions concerning STD eligibility are made exclusively by New York Life.
    o If approved, payments will be sent via current pay method and schedule.

- Please send an email at least 3 days prior to your return-to-work date confirming your intent to return date.

    o Failure to do so, could result in your return being delayed.
    o If you will require restrictions, please have them noted on the attached and sent in for review prior to your return date.

If you have any questions, please do not hesitate to contact me via leaveadmin@signatureflight.com.

Be Well,


**AVIATION**

Erika Solomon, PHR | Leave Administrator

c. 407 955 0784

f. 407 641-0280

e. Erika.Solomon@signatureflight.com

Signature Aviation Field Support Center | 13485 Veterans Way | Orlando FL 32827

This message may contain confidential and/or privileged information. If you are not the intended recipient or believe you have received this message in error, please notify us immediately by responding to the sender and then delete this message from your system.

**3 attachments**

 SIGNATURE image007.png
AVIATION    11K

 **Confidential Functional Medical Questionnaire.pdf**
187K

**General Manager.pdf**
380K

**Mitchell Todman <mtodman18@gmail.com>**                                    Thu, Apr 25, 2024 at 12:01 AM
To: "Admin, Leave (CHQ)" <leaveadmin@signatureaviation.com>
Cc: m_todman@hotmail.com, "Trombley, Cynthia (SFS-MIA CORP098)" <cynthia.trombley@signatureaviation.com>

Good Day Erica Solomon,

Please see attached as requested and I look forward to your response.

Cynthia T.- Any updates?

Sincerely,

Mitchell Todman, MBA

On Apr 11, 2024, at 10:13 AM, Admin, Leave (CHQ) <leaveadmin@signatureaviation.com> wrote:

Hi Mitchell,

Hope all is well. They should complete the attached, once returned I'll use it to assess additional leave time under ADA, as you will be out of FMLA entitlement. Let me know if I can assist further.

<image009.png>

**Erika Solomon, PHR**

Leave Administrator

(407) 955 0784

LeaveAdmin@SignatureAviation.com

13485 Veterans Way, Suite 600

Orlando, Florida 32827

**From:** Mitchell Todman <mtodman18@gmail.com>
**Sent:** Thursday, April 11, 2024 1:15 AM
**To:** Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>
**Cc:** Trombley, Cynthia (SFS-MIA CORP098) <cynthia.trombley@signatureaviation.com>; Solomon, Erika (SFS-C01 CORP398) <erika.solomon@signatureaviation.com>; m_todman@hotmail.com
**Subject:** Re: Mitchell Todman - FMLA Approval Notice

Some people who received this message don't often get email from mtodman18@gmail.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Day,

The team handling my case wants me to ask HR/Admin-Leave the following question:

What documentation is needed for Mitchell Todman to extend his leave of absence an additional three months?

Another inquiry I have is regarding my sick leave and personal leave balances in UKG. I have 9 days of sick leave, 72hrs. I have 4 days of personal leave, 32hrs. Somehow I have -13 vacation hours, which is a mystery to me. Based on the FMLA documentation I received, I recall a comment stating my sick and vacation leave would be exhausted and paid to me during my FMLA leave. Can someone clarify?

Additionally, inclusive but not limited to, my current medial leave status/treatment was precipitated by and is a culmination of two emergency medical interventions while employed with Signature. One medical intervention was a visit to the emergency room in STT. SVP Geoff Heck, LACAR Director Thomas Harper, Safety Manager Rafael Diaz, and HRBP Kerry-Ann McCollin were all informed of my emergency room visit in May of 2022. I also had a second emergency medical intervention in January of 2024 which prompted my FMLA leave. Can any of the documents/notes/etc. generated by Signature regarding my STT emergency room visit be provided to me via email? Same for January 2024 as well?

Thanks in advance!

Mitchell Todman

On Feb 2, 2024, at 5:42 PM, Admin, Leave (CHQ) <LeaveAdmin@signatureflight.com> wrote:

Hi Mitchell,

Your request for FMLA Continuous Leave for your own health condition is **approved**. Please review the attachments and important reminders listed below.

- Your leave under **FMLA** is approved for the dates January 18,2024 – April 11,2024.

     o **This is your full 12weeks of FMLA entitlement.**

- Your leave period as an **accommodation** is approved for the dates April 12,2024 – April 18,2024.

     o Your expected return to work date is **April 19, 2024**.

          § If this date changes, please notify us as soon as possible. We will require an updated medical note.

- **If you have not done so already,** please contact New York Life at 888-842-4462 to apply for Short Term Disability (STD).

     o There is a 7-calendar day waiting period for STD, and all decisions concerning STD eligibility are made exclusively by New York Life.
     o If approved, payments will be sent via current pay method and schedule.

- Please send an email at least 3 days prior to your return-to-work date confirming your intent to return date.

     o Failure to do so, could result in your return being delayed.
     o If you will require restrictions, please have them noted on the attached and sent in for review prior to your return date.

If you have any questions, please do not hesitate to contact me via leaveadmin@signatureflight.com.

Be Well,

.

<image001.png>

Erika Solomon, PHR | Leave Administrator

c. 407 955 0784

f. 407 641-0280

e. Erika.Solomon@signatureflight.com

Signature Aviation Field Support Center | 13485 Veterans Way | Orlando FL 32827

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

This message may contain confidential and/or privileged information. If you are not the intended recipient or believe you have received this message in error, please notify us immediately by responding to the sender and then delete this message from your system.

<Confidential Functional Medical Questionnaire.pdf>
<General Manager.pdf>

 **FMLA Todman Confidential Functional Medical Questionnaire Updated.pdf**
83K

**Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>**                                    Thu, Apr 25, 2024 at 9:21 AM
To: Mitchell Todman <mtodman18@gmail.com>
Cc: "m_todman@hotmail.com" <m_todman@hotmail.com>, "Trombley, Cynthia (SFS-MIA CORP098)" <cynthia.trombley@signatureaviation.com>

Hi Mitchell,

Received, an update will be provided once the review is completed.

Regards,

  **Leave of Absence**

(407) 955 0784

(407) 641 0280 - FAX

LeaveAdmin@SignatureAviation.com

13485 Veterans Way, Suite 600

Orlando, Florida 32827

**From:** Mitchell Todman <mtodman18@gmail.com>

**Sent:** Thursday, April 25, 2024 12:01 AM
**To:** Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>
**Cc:** m_todman@hotmail.com; Trombley, Cynthia (SFS-MIA CORP098) <cynthia.trombley@signatureaviation.com>
**Subject:** Re: Mitchell Todman - FMLA Approval Notice

Some people who received this message don't often get email from mtodman18@gmail.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Day Erica Solomon,

Please see attached as requested and I look forward to your response.

Cynthia T.- Any updates?

Sincerely,

Mitchell Todman, MBA

> On Apr 11, 2024, at 10:13 AM, Admin, Leave (CHQ) <leaveadmin@signatureaviation.com> wrote:
>
> Hi Mitchell,
>
> Hope all is well. They should complete the attached, once returned I'll use it to assess additional leave time under ADA, as you will be out of FMLA entitlement. Let me know if I can assist further.

<image009.png>

**Erika Solomon, PHR**

Leave Administrator

(407) 955 0784

LeaveAdmin@SignatureAviation.com

13485 Veterans Way, Suite 600

Orlando, Florida 32827

**From: Mit**chell Todman <mtodman18@gmail.com>

**Sent:** Thursday, April 11, 2024 1:15 AM
**To:** Admin, Leave (CHQ) <leaveadmin@signatureaviation.com>
**Cc:** Trombley, Cynthia (SFS-MIA CORP098) <cynthia.trombley@signatureaviation.com>; Solomon, Erika (SFS-C01 CORP398) <erika.solomon@signatureaviation.com>; m_todman@hotmail.com
**Subject:** Re: Mitchell Todman - FMLA Approval Notice

Some people who received this message don't often get email from mtodman18@gmail.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Day,

The team handling my case wants me to ask HR/Admin-Leave the following question:

What documentation is needed for Mitchell Todman to extend his leave of absence an additional three months?

Another inquiry I have is regarding my sick leave and personal leave balances in UKG. I have 9 days of sick leave, 72hrs. I have 4 days of personal leave, 32hrs. Somehow I have -13 vacation hours, which is a mystery to me. Based on the FMLA documentation I received, I recall a comment stating my sick and vacation leave would be exhausted and paid to me during my FMLA leave. Can someone clarify?

Additionally, inclusive but not limited to, my current medial leave status/treatment was precipitated by and is a culmination of two emergency medical interventions while employed with Signature. One medical intervention was a visit to the emergency room in STT. SVP Geoff Heck, LACAR Director Thomas Harper, Safety Manager Rafael Diaz, and HRBP Kerry-Ann McCollin were all informed of my emergency room visit in May of 2022. I also had a second emergency medical intervention in January of 2024 which prompted my FMLA leave. Can any of the documents/notes/etc. generated by Signature regarding my STT emergency room visit be provided to me via email? Same for January 2024 as well?

Thanks in advance!

Mitchell Todman

On Feb 2, 2024, at 5:42 PM, Admin, Leave (CHQ) <LeaveAdmin@signatureflight.com> wrote:

Hi Mitchell,

Your request for FMLA Continuous Leave for your own health condition is **approved**. Please review the attachments and important reminders listed below.

- Your leave under **FMLA** is approved for the dates January 18,2024 – April 11,2024.

    This is your full 12weeks of FMLA entitlement.

- Your leave period as an **accommodation** is approved for the dates April 12,2024 – April 18,2024.

    Your expected return to work date is **April 19, 2024**.

        If this date changes, please notify us as soon as possible. We will require an updated medical note.

- **If you have not done so already**, please contact New York Life at 888-842-4462 to apply for Short Term Disability (STD).

    - There is a 7-calendar day waiting period for STD, and all decisions concerning STD eligibility are made exclusively by New York Life.
    - If approved, payments will be sent via current pay method and schedule.

- Please send an email at least 3 days prior to your return-to-work date confirming your intent to return date.
  - Failure to do so, could result in your return being delayed.
  - If you will require restrictions, please have them noted on the attached and sent in for review prior to your return date.

If you have any questions, please do not hesitate to contact me via leaveadmin@signatureflight.com.

Be Well,



Erika Solomon, PHR | Leave Administrator

c. 407 955 0784

f. 407 641-0280

e. Erika.Solomon@signatureflight.com

Signature Aviation Field Support Center | 13485 Veterans Way | Orlando FL 32827

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

---

This message may contain confidential and/or privileged information. If you are not the intended recipient or believe you have received this message in error, please notify us immediately by responding to the sender and then delete this message from your system.

<Confidential Functional Medical Questionnaire.pdf>

<General Manager.pdf>

SIGNATURE AVIATION image001.png 11K

 **SIGNATURE AVIATION**

13485 Veterans Way, Suite 600
Orlando, Florida 32827

SIGNATUREAVIATION.COM

## CONFIDENTIAL FUNCTIONAL MEDICAL INFORMATION QUESTIONNAIRE

Note to health care provider: Please complete this form with current and accurate information relating to the individual named below. Before completing the form, please also review the attached job description and the GINA Compliance Notice below.

Name of Team Member/Patient: **Mitchell Todman 1000011338**          Date: **April 11,2024**

Name, address, and telephone number of healthcare provider completing this form:

Kettely Johnson-Licensed Clinical Social Worker, 1670 Clairmont Road Decatur, GA 30033

Phone: 470-471-5708

### GINA Compliance Notice

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic Information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

**Mitchell Todman** is employed as a General Manager, for Signature Flight Support LLC. The Team Member has requested an accommodation for a medical condition. We are seeking information from you for the purpose of evaluating Team Member's medical need for an accommodation or an extended leave of absence and whether and when Team Member will be able to return to work. To help you provide us with an informed opinion. Please provide the following information back to us by **Friday, April 26, 2024.**

1. Please describe any physical or mental impairment or medical condition prompting the request for accommodation that interferes with the Team Member's ability to perform the essential job functions safely and successfully.

Mr. Todman continues to receive treatment to address symptoms related to Chronic Post Traumatic Stress Disorder.

Essential job functions impacted: cope with anger/fear/hostility of others in a calm way,

cope with a high level of stress, follows assigned schedule, demonstrate a high degree of patience

2. Please list any specific functional limitations resulting from the impairment (including limitations resulting from medication and/or other treatment) impacting the Team Member's ability to perform the essential functions of Team Member's job.

Cope with anger/fear/hostility of others in a calm way,

cope with a high level of stress, Follows assigned schedule, Demonstrate a high degree of patience

3. Given the functional limitations identified in response to question no. 2, please list below the specific job duties you believe the Team Member is unable to perform due to his/her impairment. Please identify the underlying functional restriction(s) which prevents the Team Member from performing the job duty and identify the expected duration of each outlined restriction. (Attach additional sheets if necessary.).

| Essential Job Function | Underlying Functional Restriction(s) Impacting Job Duty | Duration Of Restriction(s) |
|---|---|---|
| 1. Cope with anger/fear/hostility of others in a calm way | irritable mood | 1 hour for 12 weeks |
| 2. cope with a high level of stress | irritable mood | 1 hour for 12 weeks |
| 3. Follows assigned schedule, | irritable mood | 1 hour for 12 weeks |
| 4. Demonstrate a high degree of patience | irritable mood | 1 hour for 12 weeks |

4. If Team Member is unable to perform safely and successfully his or her essential job functions without posing a direct threat to the health and safety of himself, herself, or others due to the Team Member's physical or mental condition, please state whether there are any potential reasonable accommodations of which you are aware that might be effective in facilitating safe and successful performance of the essential job functions. If so, please specify the reasonable accommodation and explain the factual and medical reasons why you believe the suggested accommodation(s) is/are likely to be effective in addressing the Team Member's limitations.

N/A

5. For any reasonable accommodations identified above, please specify the duration of time (if known) that the reasonable accommodation(s) is/are likely to be needed (*i.e.*, week, month, permanently etc....):

2

N/A
_____

_____

_____

_____

6.  If Team Member is currently unable to safely and successfully perform the essential functions of his or her job with or without reasonable accommodation, can you state with a degree of medical certainty that an additional period of continuous leave from work to receive treatment and/or recover will allow him or her to resume the safe and successful performance of his or her essential job functions in the near or foreseeable future?

Yes  _____                          If yes, anticipated return to work date: _____

No  _____

Unknown  X

Healthcare provider's name (print): _____

Practice Name and type of practice (and contact information if not provided above):

**Joseph Maxwell Clenland Atlanta VA Medical Center** _____

_____

_____

Signature: _____ ; LCSW        Date: 4-24-24

Please return this completed form to the following address or fax number no later than
**Friday, April 26, 2024.**

**TO: Signature Flight Support Leave Administrator**
**FAX:** 407.641.0280
**EMAIL:** LeaveAdmin@SignatureAviation.com

3



**SIGNATURE
AVIATION**

13485 Veterans Way, Suite 600
Orlando, Florida 32827

SIGNATUREAVIATION.COM

April 26, 2024

**VIA EMAIL ONLY**
**Mitchell Todman**
4268 Savannah Drive
Atlanta, GA 30349
m_todman@hotmail.com

Mitchell,

We hope this letter finds you well. As you know, you exhausted your leave entitlement under the FMLA when you took leave from January 18, 2024, through April 19, 2024. On April 25, 2024, we received from your medical provider the medical documentation we requested to evaluate whether continued leave is necessary and otherwise reasonable. We have explored whether additional leave from work would assist you with returning to work in the near future.

Your medical provider requested leave for an additional unknown and thus indefinite period. Your doctor could not say, to a degree of medical certainty, that additional leave would allow you to return to work in the near or foreseeable future.  The operations are unable to support an indefinite leave, and indefinite leave is not a reasonable accommodation. We are denying your request for an additional leave of absence. Having suggested no reasonable accommodations that may help you return to work and perform your essential job functions, we have no choice but to end your employment with Signature Flight Support LLC effective April 26, 2024.

You will receive information concerning how to extend any eligible benefits under COBRA under separate cover. You may direct all future employment reference requests to the Work Number at 1-800-996-7566 or www.theworknumber.com, using Employer Code #13003, which will provide only your dates of employment and positions held, and no other information.

If you have any questions, you may reach me at leaveadmin@signatureaviation.com or at (407) 955 0784.

Sincerely,

**Erika Solomon**, Leave Administrator, HR

 **Georgia Department of Labor**

**GEORGIA DEPARTMENT OF LABOR – APPEALS TRIBUNAL**
**148 Andrew Young Intl Blvd NE, Ste 525, Atlanta GA 30303-1734**
**1.877.709.8185**
**appeals@gdol.ga.gov**

### Decision of Administrative Hearing Officer

| | |
|---|---|
| **Appealing Party:** CLAIMANT | **Decision Mailed:** 01/27/2025 |
| **Appeal Filed:** 09/11/2024 | **Docket #:** 37150-24 |
| **Hearing Date:** 01/22/2025 | **Appeal Rights Expire:** 02/11/2025 |

COPIES OF THIS DECISION WERE MAILED TO:

MITCHELL TODMAN
4268 SAVANNAH DR
COLLEGE PARK GA 30349

SIGNATURE FLIGHT
TALX UCM SERVICES INC
P O BOX 283
ST LOUIS MO 63132

**APPEARANCES:**
This hearing was held by telephone conference with the claimant representing himself. The employer did not participate in the hearing.

**O.C.G.A. PROVISIONS AND ISSUES INVOLVED:**
OCGA Section 34-8-194(2) – Whether the discharge or suspension of the claimant was for failure to follow orders, rules or instructions or failure to perform the duties for which employed.

OCGA Section 34-8-157(b) – Whether the employer supplied written separation information to the Department of Labor in a timely manner.

**FINDINGS OF FACT:**
The claimant was employed by the named employer starting September 23, 2019, until April 26, 2024, as a full-time General Manager.

In January 2024, the claimant applied and was approved for family medical leave due to stress. The claimant family medical leave started January 18, 2024, for twelve weeks to return in April 2024. In April 2024, the claimant was advised by his physician he could return to work under the conditions to continue therapy sessions once a week for twelve additional weeks. The claimant's physician submitted his recommendations to the employer. The employer contacted the claimant via email advising his physician request was received and up for review. On April 26, 2024, the employer contacted the claimant advising due to the indefinite amount time needed they are unable accommodate him with the request made by his physician and he's being discharged.

The claimant has not returned to work for the named employer since his discharge. The claimant contends he has filed an complaint with the EEOC as of August 2024, in which the case is presently ongoing.

According to agency records the employer furnished timely separation information to the Department of Labor.

**REASONS FOR DECISION:**

O.C.G.A. Section 34-8-194(2)(A) provides for a disqualification if it is shown that an employee has been discharged or suspended from her most recent employer for failure to obey rules, orders, or instructions, or for failure to perform the duties for which employed. This Section of the Law places the burden of proof on the employer to show by a preponderance of the evidence that the employee was at fault by a deliberate, willing, and knowing action on his part.

In this case, credible testimony and evidence in the record shows that the claimant was not at fault for his discharge. The employer was not present for the scheduled hearing to show by a preponderance of the evidence that the claimant was at fault by a deliberate, willing, and knowing action on his part. Therefore, a disqualification is not required in accordance to the above cited provisions of the Law.

O.C.G.A. Section 34-8-157(b) provides that benefits paid shall be charged to the account of the most recent employer. The amount charged shall be the amount of benefits paid for the period of unemployment or the amount of wages paid by the employer from the beginning date of the base period of the claim whichever is less.

**DECISION:**

The determination released by the Department on September 10, 2024, disqualifying the claimant effective August 18, 2024, under O.C.G.A. Section 34-8-194(1), is reversed. The claimant shall be entitled to unemployment insurance benefits effective August 18, 2024, under the provisions of O.C.G.A. Section 34-8-194(2)(A). The claimant will be entitled to benefits for all weeks that claimant has met all the reporting and eligibility requirements as provided for under the provisions of O.C.G.A. Section 34-8-195(a)(3).

The employer's tax account shall be charged for benefits paid for the period of unemployment or the amount of wages paid during the period beginning with the base period of the claim, whichever is less, in accordance with O.C.G.A. Section 34-8-157(b).

*Shareka Nixon*

**SHAREKA L. NIXON**
**HEARING OFFICER**

This is to certify that this decision was mailed on the above date by the clerk of the Appeals Tribunal.

**Appeal Rights**

This decision will become final unless you file an appeal by the deadline. Appeal rights expire 15 calendar days after the decision is mailed. If you wish to file an appeal, select File Appeal below. You may find more details here or by contacting Customer Service or your local career center.





**DEPARTMENT OF VETERANS AFFAIRS**

October 19, 2024

Mitchell Todman
4268 Savannah Dr
Atlanta, GA 30349

In Reply Refer to:
xxx-xx-4141
27/eBenefits

Dear Mr. Todman:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: xxx-xx-4141

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Army | Honorable | August 11, 1998 | August 10, 2001 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| You have one or more service-connected disabilities: | Yes |
| Your combined service-connected evaluation is: | 100% |
| You are considered to be totally and permanently disabled due solely to your service-connected disabilities: | Yes |
| The effective date of when you became totally and permanently disabled due to your service-connected disabilities: | August 31, 2024 |

You should contact your state or local office of Veterans' affairs for information on any tax, license, or fee-related



benefits for which you may be eligible. State offices of Veterans' affairs are available at
http://www.va.gov/statedva.htm.

## How You Can Contact Us

- If you need general information about benefits and eligibility, please visit us at https://www.ebenefits.va.gov
  or http://www.va.gov.

- Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-
  800-829-4833.

- Ask a question on the Internet at https://www.va.gov/contact-us.

Sincerely Yours,

**Regional Office Director**